[Civ. No. 1045.   Third Appellate District.—May 13, 1913.]

## CITIZENS' BANK (a Corporation), Respondent, v. WM. McK. STEWART, Appellant.

PROMISSORY NOTE—PURCHASE BY BANK—BONA FIDE HOLDER—BURDEN OF PROOF.—In an action on a note purchased or discounted by the plaintiff bank, before maturity and in the usual course of business, the burden is on the defendant to show bad faith in the purchase, want of consideration, or any defense that might have been urged by the maker against the payee.

ID.—CONSIDERATION PAID BY PURCHASER AS AFFECTING TITLE.—It is not incumbent upon such a purchaser to show that it paid full value for the note. The amount paid, rarely, if ever, ought of itself to impeach the purchaser's title, as a matter of law, although inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, warrant a finding of *mala fides*.

ID.—NOTICE OF EQUITIES—PRESUMPTION.—When it is shown that an indorsee has purchased before maturity a note regular upon its face, to impute to him notice of the equities of the maker is equivalent to the charge that he would be guilty of wrong-doing, that he would be a voluntary participant in the fruits of a fraudulent transaction. It must be assumed, rather, that he was free from moral obliquity, and influenced by motives of fair and honorable conduct.

ID.—EVIDENCE OF NOTICE OF EQUITY—STATEMENT OF PRESIDENT OF BANK.—The statement of the president of a bank that the bank, in purchasing or discounting a note, had no notice of any infirmity, is sufficient evidence to establish want of notice.

APPEAL from a judgment of the Superior Court of Sonoma County. M. S. Sayre, Judge presiding.

The facts are stated in the opinion of the court.

T. J. Butts, for Appellant.

J. T. Coffman, for Respondent.

BURNETT, J.—The action is upon a promissory note, which appears, by admissions and evidence, to have been signed, executed, and delivered by appellant to the American Manufacturing Company and by the payee sold and assigned, on July 3, 1911, before maturity, and for a valuable consideration, to the respondent. The note was dated June 8, 1911, and was in the following form: "For value received I promise to pay to the order of American Manufacturing Company fifteen hundred dollars at Lexington, Tennessee, in ten installments as below: . . . Default in the payment of any installment shall, at the option of the payee herein, render the unpaid balance immediately due and payable."

It is not disputed that appellant was in default according to the terms of said note, but he seeks to justify upon the ground of fraud on the part of the payee and of failure of consideration as between the original parties to the instrument. Respondent's position is that any such defense cannot be considered for the reason that the case is clearly brought within the contemplation of sections 3123 and 3124 of the Civil Code, providing as follows: "An indorsee in due course is one who, in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer," and "An indorsee of a negotiable instrument, in due course, acquires an absolute title thereto, so that it is valid in his hands, notwithstanding any provision of law making it generally void or voidable, and notwithstanding any defect in the title of the person from whom he acquired it."

It is not denied that the note was transferred before maturity and in the regular course of business, but the principal question of dispute relates to the burden of proof as to the consideration and notice of appellant's equities.

It is contended by him that it was incumbent upon respondent to show that it paid full value for the note and that it had

no notice of any defense that might have been urged by the maker against the payee. In this appellant is clearly in error.

Respondent, having purchased the note before maturity in the regular course of business, became thereby the owner of the legal title, invested with the presumptions that are incidental to the ordinary transfer of property ownership, and to overcome the effect of these presumptions it was incumbent upon appellant to offer proof to impeach the good faith of respondent's purchase.

In *Eames* v. *Crosier*, 101 Cal. 260, [35 Pac. 873], it is held that "upon proof, by the defendant of fraud or illegality in the inception of the note, the burden is cast upon the indorsee to show that he is an innocent holder, which he may do by showing that he purchased the notes before maturity, or from an innocent indorsee for value, in the usual course of business; and when he had done this, *unless the evidence shows that the note was taken by plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show that the plaintiff took the instrument with notice of defendant's equities.*"

To the same effect is *Bell* v. *Pleasant*, 145 Cal. 410, [104 Am. St. Rep. 61, 78 Pac. 957], wherein it is said: "The indorsement carries the legal title to the note and vests it in the indorsee, and if it is shown by him that he bought for a valuable consideration before maturity, his legal title cannot be divested nor his right to recover defeated, without the proof which shows the purchase to have been fraudulent—namely, that he had notice of the lack of consideration or of the fraud, or other defense of the maker. . . . It follows that, in the absence of any evidence on the subject, the finding should have been in favor of plaintiff on this point." See, also, *Meyer* v. *Lovdal*, 6 Cal. App. 369, [92 Pac. 322], where the cases are reviewed and the same doctrine announced.

In 7 Cyc., p. 941, it is declared that "where there is nothing about the paper itself or the circumstances attending its negotiation to excite suspicion, a purchaser is not called upon to make inquiries concerning the execution thereof or the consideration for which it was given to avert the imputation of bad faith. Nor in the absence of suspicious circumstances is he bound to inquire whether the indorser has performed or

will be able to perform the agreement into which he has entered.''

As to the adequacy of the consideration for the purchase, it is stated, on page 930 of the same volume, that no precise rule can be laid down ''but it is clear that payment of the full face value of the paper is not required. In fact, a note is property which may be sold at any price and the amount paid therefor rarely, if ever, ought of itself to impeach the purchaser's title as a matter of law, although inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of *mala fides.*'' The presumption ''that a promissory note or bill of exchange was given or indorsed for a sufficient consideration'' is required, indeed, by subdivision 21, section 1963 of the Code of Civil Procedure.

In the last analysis, the question is really whether we are to presume that the indorsee acted in good faith. To state the proposition is to answer it.

When it is shown that an indorsee has purchased before maturity a note regular upon its face, to impute to him notice of the equities of the maker is equivalent to the charge that he would be guilty of wrong-doing, that he would be a voluntary participant in the fruits of a fraudulent transaction. We must assume, rather, in the absence of evidence to the contrary, that he was free from moral obliquity and influenced only by the motives of fair and honorable conduct.

But, aside from the foregoing, the only rational inference that can be drawn from the evidence in the record supports the findings in favor of respondent. H. E. Graper, the president of respondent bank, testified as follows: ''The Citizens' Bank is a corporation chartered under the laws of Tennessee in the year 1905, for the purpose of doing a general banking business of deposit and discount. The paper you hand me is a note purporting to be executed by Wm. McK. Stewart, payable to the American Manufacturing Company at Lexington, Tenn. . . . The Citizens' Bank is the owner and holder of that note at this time. The Citizens' Bank purchased the note from the American Mfg. Co. on July 3, 1911. Mr. R. W. Hall, the treasurer of the American Mfg. Co. transferred the note to the Citizens' Bank. I acted for the bank in the purchase of the note. The purchase of the note made by the Citizens' Bank

was before the maturity of any installments thereon. . . . At the time of the purchase I did not know of any defects in the making of the note.  The note herein spoken of was delivered at the time it was sold to the bank.  There was no kind or character of written instrument or printed one attached to the note when I purchased the same for the bank.  In the purchase of this note I gave a valuable consideration for the same.''

R. W. Hall, the treasurer of the said American Manufacturing Company, testified: ''The American Manufacturing Company has no interest in the note at this time, has had no interest since the sale of the note.  The note was sold to the Citizens' Bank July 3, 1911.  This note was discounted to them on that day and the American Manufacturing Company received the proceeds therefor.''

As to the consideration, it is clear from the foregoing that the note was ''acquired for value'' in the ordinary course of business, as demanded by the statute.  Indeed, it is not an unfair deduction that the face value of the note, less the usual discount at the legal rate, was paid by the bank to the manufacturing company.

In reference to the want of notice, it is the contention of appellant that the showing is that the president and not the bank had no notice.  Of course, the bank could have no notice except through some of its officers.  As to this two observations seem appropriate.  The officer to whom such notice should and would probably be given is the one authorized to represent the bank in the purchase of the note.  Or, if any other officer had notice of any equity of the maker of the note, it is reasonable to infer that he would immediately communicate it to the president.  It is, therefore, fair to say that the president's statement is sufficient evidence that the bank had no notice of any infirmity in the note.

We can see no legal ground upon which appellant's contention can be maintained and the judgment is, therefore, affirmed.

Chipman, P. J., and Hart, J., concurred.