[No. 13078.   Department One.   October 21, 1916.]

MOORE & COMPANY, *Appellant*, v. NETTIE E. BURLING *et al.*, *Respondents.*[1]

BILLS AND NOTES—BONA FIDE HOLDERS—FRAUD—NOTICE—EVIDENCE—SUFFICIENCY. Although a large discount puts a purchaser on inquiry, that fact, with notice that mortgage notes were given in payment of mining stock, is not sufficient to show that the purchaser had notice of fraud in the procurement of the notes, where inquiry was made of the maker before purchase and the maker stated that the notes were all right, and it was shown that the investment was not well thought of.

SAME — BONA FIDE HOLDERS — DISCOUNT — AMOUNT OF RECOVERY. Under Rem. 1915 Code, § 3448, providing that the holder in due course holds the instrument free from any defects and may enforce payment for the full amount against all parties, a *bona fide* purchaser at a large discount may recover from the maker the full face of mortgage notes.

SAME—NEGOTIABILITY—PROVISIONS IN MORTGAGE AS TO SECURITY. Mortgage notes are not rendered nonnegotiable by provisions in the mortgage respecting insurance, payment of taxes and attorney's fees on foreclosure which would have rendered the notes nonnegotiable if incorporated in the notes, as the provisions relate merely to the preservation of the security.

Appeal from a judgment of the superior court for King county, Frater, J., entered July 6, 1915, upon findings in favor of the defendants, in an action to foreclose a mortgage, tried to the court. Reversed.

*Farrell, Kane & Stratton* and *Stanley J. Padden*, for appellant.

*F. C. Kapp*, for respondents.

FULLERTON, J.—The Charleston National Mining Company is a corporation organized under the laws of the state of Washington. In 1913, it held a leasehold interest in certain undeveloped mining property situated in the state of Nevada, which it was developing through means obtained by

[1]Reported in 160 Pac. 420.

sales of its capital stock. J. P. Clough was the president and manager of the company and had charge of such sales. In October of the year named, he came to Seattle and engaged the assistance of Kay McKay, a broker doing business in Seattle, to sell the stock, agreeing to allow him a fifty per cent commission on all stock sold by him or through his assistance. McKay introduced Clough to the respondent Nettie E. Burling, and they jointly endeavored to induce her to make an investment in the stock. After a time they succeeded, Mrs. Burling taking $7,500 worth of the stock at its par value. In payment for the stock, Mrs. Burling gave her promissory notes for the amount of the purchase, securing the same by a mortgage upon real property which she owned in the city of Seattle. The notes were six in number, were negotiable in form, and were payable on or before two years after their respective dates, with interest at eight per cent per annum, payable semi-annually, and contained an accelerating clause making the whole debt due and payable in case of the failure to pay any installment of interest when due.

After procuring the mortgage, Clough, with the aid of McKay, sought to sell the same to investors in the city of Seattle, but could obtain for it no satisfactory price. Among the investors to whom it was offered, was the appellant, Moore & Company, who refused to take it at the price at which it was first offered. After further attempts to sell it to other parties, it was brought back to Moore & Company, who purchased it for $5,000 in cash.

Mrs. Burling paid the first installment of interest when the same became due, but defaulted as to the second. Moore & Company thereupon began this action to foreclose the mortgage, electing to declare the whole sum due and payable. Mrs. Burling answered, setting up fraud in the procurement of the notes. Moore & Company replied, denying the fraud, and pleading affirmatively that it was a holder in due course. After a trial, the court held with Mrs. Burling, finding that the notes were procured from her through fraud practiced

upon her by Clough and McKay, and that Moore & Company purchased the notes with knowledge of the fraud. Judgment was entered accordingly, from which Moore & Company appeal.

On the first branch of the case, we have no hesitancy in saying that the findings of the trial court are abundantly supported by the record. The evidence makes it clear that Mrs. Burling was grossly deceived by Clough and McKay and induced to purchase the stock because of such fraud and deceit.

With reference to Moore & Company, however, we have been unable to conclude that the evidence justifies the finding of the trial court. In the transactions leading up to the purchase of the notes, the company was represented by J. E. Moore, its manager. A careful reading of the record does not disclose that he in any manner participated in the sale of the stock to Mrs. Burling, or knew of the fraudulent acts or representations of Clough and McKay which induced Mrs. Burling to make the purchase. While it is inferable that he knew that the notes were given for the purchase of mining stock, and knew that Clough and McKay were selling stock in the particular mine, it is not in evidence that he knew anything concerning the value of the stock, or anything more about the mining company or its prospects than did Mrs. Burling herself. It is true he bought the mortgage for his company at a large discount; but this, while it might put the purchaser on inquiry, is not sufficient alone to constitute bad faith. *McNamara v. Jose*, 28 Wash. 461, 68 Pac. 903; *Citizens' Bank v. Stewart*, 22 Cal. App. 91, 133 Pac. 337; *Ham v. Merritt*, 150 Ky. 11, 149 S. W. 1131.

Here the purchaser did make inquiry. Before purchasing the notes, Moore communicated with Mrs. Burling by telephone, telling her that he purposed purchasing the notes, and inquired if the notes and mortgage were "all right," receiving an answer in the affirmative. The record abundantly shows, furthermore, that the paper was not considered a par-

ticularly desirable investment by other dealers in such paper. Prior to the time it was offered to Moore & Company, it had been in the hands of a number of brokers, who had been unable to sell it even at the price it was finally sold to that company.

Other considerations are urged which it is contended show that Moore & Company is not a purchaser in good faith. These we shall not notice specifically. To our minds they are insufficient to excite even a suspicion, much less do they establish bad faith with that degree of certainty necessary to be found in order to overcome the presumption of good faith and fair dealing.

It is urged that, if recovery be allowed, it cannot be for a larger sum than the amount paid by the purchaser for the notes with interest. The legislature, however, has willed otherwise. By the negotiable instruments act (Rem. 1915 Code, § 3448), it is provided that the holder in due course holds the instrument free from any defects, and "may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

A further contention is made to the effect that the notes are not negotiable. This is founded on the fact that the mortgage given to secure their payment contained provisions respecting insurance, payment of taxes, and attorney's fees on foreclosure which would have rendered the notes nonnegotiable if incorporated therein. But the rule is that the provisions contained in a mortgage securing a contemporaneous note, which merely relate to the preservation of the security, are not made a part of the note so as to destroy its negotiability, under the rule that contemporaneous instruments relating to the same subject-matter must be construed together. *Bright v. Offield,* 81 Wash. 442, 143 Pac. 159.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

MORRIS, C. J., MOUNT, and ELLIS, JJ., concur.