[No. 17421.  Department One.  December 28, 1922.]

FIRST NATIONAL BANK OF MEDICAL LAKE, *Appellant*, v.
HENRY WILTZIUS, *Respondent*.[1]

BILLS AND NOTES (141)—BONA FIDE PURCHASERS IN GOOD FAITH—
HOLDER IN DUE COURSE—EVIDENCE—SUFFICIENCY.  Under Rem. Comp.
Stat., §§ 3443, 3447, providing that a holder in due course must
take it in good faith for value, and without knowledge of such
facts that his action amounted "to bad faith," whether a bank
was a holder in due course, of notes given by an ignorant farmer
for mining stock, was a question for the jury, where it appears
that, upon inquiry of another bank as to the maker's financial
standing, it was informed that similar notes had been secured from
others by a guarantee that the notes would be returned with a
bonus at maturity, and that the brokers were not making good and
were discounting the notes, and that thereafter the notes, which
were induced by fraud in the manner detailed, were purchased at
a fifteen per cent discount.

SAME (61)—ESTOPPEL (17, 23)—EQUITIES AND DEFENSES AGAINST
PURCHASER—NOTICE—PREJUDICE TO PARTIES.  The maker of notes
induced by a fraudulent artifice is not estopped from denying the
infirmity, in the hands of one who was not a holder in due course,
by negotiations with such holder with reference to a renewal or
the giving of security, occurring after maturity, where it all took
place before his discovery of the fraud and no disadvantage to the
holder resulted therefrom.

Appeal from a judgment of the superior court for
Lincoln county, Truax, J., entered December 15, 1921,
upon the verdict of a jury rendered in favor of the
defendant, in an action upon contract.  Affirmed.

*McCarthy, Edge & Lantz*, for appellant.

*Samuel P. Weaver* and *Weaver & Furber*, for re-
spondent.

MITCHELL, J.—This action is on two promissory
notes, six hundred dollars each, dated July 7, 1920, due
four months from their date, bearing interest at eight

[1]Reported in 211 Pac. 275.

per cent per annum, made by defendant, Henry Wiltzius, to one Dudman, who endorsed and delivered them before maturity to the plaintiff, the First National Bank of Medical Lake. The defense was that the notes were procured by fraud on the part of Dudman, and that the plaintiff was not a holder in due course. No objections are presented to the instructions to the jury. The jury returned a special finding that the plaintiff exercised bad faith in the purchase of the notes, and a general verdict for the defendant. From a judgment on the verdict, the bank has appealed.

The assignments are that the court erred, (1) in denying a motion to direct a verdict for the appellant; (2) in denying appellant's motion for judgment notwithstanding the verdict; and (3) entering judgment for the respondent.

It appears that Dudman was engaged in the sale of mining stock and, prior to the transaction here involved, had a conference with appellant about selling to it notes taken from purchasers of stock. Wiltzius, it seems, was an ignorant farmer. He declined to purchase stock, but yielded to Dudman's proposition that, in consideration of two six hundred dollar four months' promissory notes, he would furnish him two thousand dollars, par value, of the stock, with the further understanding that, in sixty days, he, Dudman, would deliver back the notes, take up the stock and pay him one hundred dollars cash. A few days after giving the notes, the respondent received the stock by mail. The notes were endorsed and delivered to the bank thirteen days later by Dudman, who seems not to have been heard of since by any of the parties to this action. At the time the notes were signed by the respondent, he also signed and delivered to Dudman a written instrument as follows:

"First National Bank, Medical Lake, Wash. ·

"Dear Sirs: It will be satisfactory with me if you should see fit to handle my notes to Mr. Dudman this day for (600) each Six Hundred No/100 Dollars.

"Henry Wiltzius."

Concerning this instrument, the respondent testified that the signature was his, but that it had been obtained without his knowledge. Further, concerning the same instrument, the cashier of the bank testified that, in his first interview with Dudman, looking to the probable future purchase of notes payable to him, the bank would require some such writing to it from the makers of notes. Within a few days after the notes were made and delivered, Dudman presented them for sale to the bank, delivering to it at the same time the additional instrument. Before taking the notes, however, the appellant wrote a letter to each of two banks. One letter, to the Farmers State Bank at Sprague, Washington, was as follows:

"Dear Sirs: We have been offered for discount one note for $600 signed by Nick Wiltzius and one note for $1,200 signed by Henry Wiltzius, both of which parties are reported to be residents of your community. These two notes were given for mining stock and are due in four months. Would you be good enough to give us what information you can concerning these two men and your opinion as to their ability and promptness in meeting these obligations or any that they might contract."

The letter to the Bank of Sprague, Sprague, Washington, was to the same effect.

The Farmers' State Bank replied that it considered Henry Wiltzius a good risk, that he owned three hundred twenty acres of land, and was conservative and prompt in meeting his obligations. The letter further stated that he was rather peculiar to deal with, and should the mining stock not pan out, he might

object to paying the notes and cause some trouble. The Bank of Sprague, Sprague, Washington, answered appellant's letter giving the respondent's financial standing at probably twenty thousand dollars and that he had always made good on his obligations. The letter further stated that the bank believed Wiltzius

"would be able to meet these notes at maturity provided no dispute arises, but I am informed that several of our citizens have been induced to give notes for stock with a guarantee of some sort that the notes would be returned with bonus at maturity, and that the brokers are not making good on their contract but are discounting the notes. I am inclined to believe that some trouble will arise between the makers of these notes and the brokers, and therefore could not recommend the purchase of the notes. Thanking you to keep this information confidential."

After receiving the letters from the two banks at Sprague, appellant claims to have purchased the two notes at fifteen per cent discount. There are other facts and circumstances in evidence of minor importance that lead in the direction of the verdict in this case, unnecessary to be detailed.

The statute upon the subject of a holder in due course, Rem. Comp. Stat., § 3443, provides, among other conditions, "that he take it in good faith and for value." To constitute notice of an infirmity in the instrument, it is not indispensable that the one to whom it is negotiable have actual knowledge of the infirmity, but it is enough if he have "knowledge of such facts that his action in taking the instrument amounted to bad faith." Rem. Comp. Stat., § 3447. The test is, did the endorsee act in good faith. *Scandinavian-American Bank v. Johnston*, 63 Wash. 187, 115 Pac. 102; *Keith v. Tsue Chong*, 119 Wash. 507, 205 Pac. 834. Practically all of the testimony in the record upon the subject of the circumstances under which the appellant

acquired the notes in suit was given by the cashier of the bank, and certainly it justified the trial court in submitting the question to the jury. *Rohweder v. Titus*, 85 Wash. 441, 148 Pac. 583; *Union Investment Co. v. Rosenzweig*, 79 Wash. 112, 139 Pac. 874; *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801.

Appellant concedes that Dudman acted fraudulently in obtaining the notes, but does not concede that the respondent acted on Dudman's misrepresentations, but rather upon the statements of one Miller who was present at the time the notes were given. It appears that Miller was a neighbor farmer and a new victim of the same artifice at the hands of Dudman, and while Miller expressed to the respondent his belief in the investment proposed, the respondent testified that Miller did not urge him to enter into the deal but that in making it he relied on Dudman's word.

Some further contention is made by the appellant that, because of certain conduct on the part of the respondent with reference to a renewal of the notes, and possibly the giving of a mortgage to secure them, occurring after the maturity of the notes in suit, the respondent is estopped from denying any infirmity in them or that appellant was a holder in due course. Without discussing that evidence with reference to whether it would ordinarily preclude the respondent, it is enough to say that it all took place prior to the respondent's knowledge of the fraud perpetrated on him; that, upon learning of the fraud, he refused to consider the notes as binding obligations upon him; and that, in the meantime, none of that conduct caused disadvantage to the appellant.

The case was properly submitted to the jury. Judgment affirmed.

PARKER, C. J., BRIDGES, and MACKINTOSH, JJ., concur.