[No. 17980. Department One.  June 11, 1924.]

THE FIRST NATIONAL BANK OF RITZVILLE, *Appellant*, v.
W. S. EGBERS *et al., Respondents*, W. S. EGBERS,
*Cross-Appellant.*[1]

BILLS AND NOTES (141)—GOOD FAITH AND PAYMENT OF VALUE—
EVIDENCE—SUFFICIENCY. The mere purchase by a bank of notes
given for mining stock at a discount of 30% is not alone sufficient
to show that the bank was not a holder in due course, where it ap-
pears that inquiry at the time would not have disclosed any fraud
in the taking of the note.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered November 18, 1922,
upon the verdict of a jury rendered in favor of the
defendants, in an action on a promissory note. Re-
versed.

*G. E. Lovell* and *E. A. Davis*, for appellant.

*C. E. H. Maloy*, for respondent and cross-appellant.

MAIN, C. J.—The plaintiff brought this action on a
promissory note which had been indorsed to it by the
original payee. One of the defenses was that the note
had been fraudulently obtained from the defendants
and that the plaintiff took it charged with notice of
this infirmity.

The cause was tried to the court and a jury, and the
plaintiff moved for a directed verdict, which motion
was overruled. After the verdict was returned, a mo-
tion for judgment notwithstanding the verdict was
interposed and overruled. Judgment was entered on
the verdict, and the plaintiff appeals.

This case is very similar to the recent case of the
*First National Bank of Ritzville v. Gunning*, 127 Wash.

[1]Reported in 226 Pac. 492.

307, 220 Pac. 793. It will be unnecessary here to make other than a brief statement of the facts, as the facts are fully stated in the case referred to. One Harry Dudman sold mining stock to the respondents and took for the same five promissory notes in the sum of $500 each. Soon after acquiring these notes, and on or about May 24, 1919, Dudman sold one of them to the appellant bank at a discount of ten per cent. A few days later he sold the other four at a discount of thirty per cent. When the notes became due, they were renewed by the respondents and the whole amount was placed in one note. The last renewal was on March 24, 1921, and was by a note for the sum of $2,500, due six months after date.

The question for determination is whether there was any evidence to carry the case to the jury upon the question as to whether the appellant took the notes in good faith. In the case above referred to, the trial court had directed a verdict for the plaintiff, and in that case it was held that there were no facts and circumstances which would take the case to the jury upon the question of the good faith of the plaintiff. There is no distinction between that case and the present one unless it be in the fact that four of the notes were taken at a discount of thirty per cent. This, however, is not sufficient in itself to constitute evidence of bad faith. In *McNamara v. Jose,* 28 Wash. 461, 68 Pac. 903, it was said:

"Again, the purchase of a note at a discount is not of itself, under ordinary circumstances, evidence of bad faith. When it is very large, that circumstance may be considered in connection with other circumstances in determining the question of the purchaser's good faith; but unless the consideration be merely nominal, or so grossly inadequate as to lead to the conclusion that the purchase is made for the purpose of specula-

ting upon the chances of collection, it is not of itself sufficient to justify a finding of bad faith.''

In *Moore & Co. v. Burling,* 93 Wash. 217, 160 Pac. 420, it was said:

''It is true he bought the mortgage for his company at a large discount; but this, while it might put the purchaser on inquiry, is not sufficient alone to constitute bad faith.''

If it be assumed that the discount of thirty per cent was sufficient to put the appellant upon inquiry, it would not change the result. W. S. Egbers, one of the makers of the note, testified that he did not know of the fraud that had been worked upon him in his purchase of the mining stock until after March 24, 1921, and up to that time had no suspicions that Dudman had misrepresented the facts. This was almost two years after the transaction occurred and the notes were sold to the appellant. It is apparent that if inquiry had been made of the makers of the note, the bank would have acquired no knowledge from them that the notes had been fraudulently obtained.

It seems to us that there is no substantial distinction between this case and the *Gunning* case above cited. The judgment will therefore be reversed, and the cause remanded with directions to the superior court to enter a judgment in favor of the appellant.

Reversed.

MACKINTOSH and BRIDGES, JJ., concur.

MITCHELL, J., concurs in the result.