[No. 19433. Department Two. March 12, 1926.]

INLAND MORTGAGE & LOAN COMPANY, *Respondent*, v. M. CADY, *Appellant*.[1]

[1] BILLS AND NOTES (141)—GOOD FAITH AND PAYMENT OF VALUE—EVIDENCE—SUFFICIENCY. A bank taking a note complete and regular on its face, before maturity, for value, is not shown to have taken it with lack of good faith or with notice of any infirmity, where it merely appears that the maker refused to consent to its negotiation and notified the bank not to buy it and that he would not pay it.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered April 4, 1925, upon the verdict of a jury rendered in favor of plaintiff, in an action on a promissory note. Affirmed.

*Harry W. Reading* and *W. O. Miller,* for appellant.
*Lovell & Ott,* for respondent.

MACKINTOSH, J.—This is an action upon a promissory note given to one Dudman for the purchase of mining stock. Similar cases involving the fraudulent transactions of Dudman, by which he procured promissory notes, have been considered by this court in: *First National Bank of Medical Lake v. Wiltzius,* 122 Wash. 637, 211 Pac. 275; *First National Bank of Ritzville v. Gunning,* 127 Wash. 307, 220 Pac. 793; *Lovell v. Dotson,* 128 Wash. 669, 223 Pac. 1061; *First National Bank*

[1]Reported in 244 Pac. 123.

*of Ritzville v. Egbers,* 130 Wash. 221, 226 Pac. 492.
Dudman, after securing the note from the appellant,
procured a written authorization from him allowing
the note to be negotiated. The note was dated March
25, 1920, and on the following day the appellant went
to the banking rooms of the First National Bank of
Ritzville (which will be considered hereinafter as the
respondent in this case, the bank having thereafter
negotiated the note to the Inland Mortgage & Loan
Company, a subsidiary organization), and the follow-
ing incident occurred at that time, as testified to by
the appellant.

"I went over there and asked Mr. Greene [the bank
president], if Mr. Dudman was in there with that note
of mine the night before. He says, 'He was.' I says,
'Don't buy it. If you do I am not going to pay it.' He
says, 'If I don't buy it, Downey of Harrington will.'
I says, 'That is Mr. Downey's business. I am telling
you not to buy it, because your sending out that slip
caused you to notify me that Dudman was crooked.' "

It may be assumed from the testimony that there-
after the bank purchased the note. The question for
determination is, whether the bank was a holder in due
course.

By § 3443, Rem. Comp. Stat., in order to constitute
one a holder in due course of a negotiable instrument,
he must have taken it when it was complete and regular
upon its face, before it is overdue, and for value, in
good faith and with no notice of any infirmity in the
instrument itself, or defect in the title of the person
who has negotiated it. It is confessedly true that the
bank, in taking the note here, took an instrument which
was complete and regular upon its face, took it before
it was overdue and paid value for it. The only re-
maining question is, whether there was such a notice
of infirmity in the instrument or defect in the title of

Dudman that the bank cannot be said to be a holder in good faith.

[1] The testimony, which has been quoted, is all the testimony in the record upon which the appellant relies to substantiate his position that the bank is not a due course holder. The mere refusal of the maker of a promissory note to pay it before it is due is not evidence of any infirmity in the instrument or defect in the title of the person then holding it. There was nothing in the appellant's statement to the bank president indicating that the note had been procured from him by any fraud or misrepresentations. He did not state to the bank that he was refusing to pay the note because he had been imposed upon, or that it had been obtained from him in any other than an honest way. He was not objecting at that time to the investment which he had made. His objection was to the fact that the bank, before it would consider the purchase of the note, had insisted that authorization should be secured from the maker for its transfer. This was no notice to the bank of any infirmity in the instrument or defect in the then holder's title, and shows no lack of good faith upon the part of the bank in thereafter buying the note. This actual transaction was considered by this court in *First National Bank of Ritzville v. Gunning, supra.* It was testified to in the *Gunning* case as being evidence of the bank's bad faith, and inferentially it was there held, by adopting a statement of the trial court in regard to the transaction with the appellant, that there was no bad faith shown in the purchase of this note.

The judgment is therefore affirmed.

TOLMAN, C. J., MAIN, and PARKER, JJ., concur.