(No. 5634. April 9, 1931.)

SAMUEL BAILEY HARRIS, Appellant, v. BEN SAINS-
BURY and BEN SAINSBURY, Doing Business in and
Under the Name and Style of SAINSBURY & SON,
Respondents.

[298 Pac. 360.]

C. W. Poole, for Appellant.

W. A. Ricks, for Respondent, cites no authorities on points decided.

VARIAN, J.—Action by holder for value upon two trade acceptances aggregating $700 in amount, given in part payment of certain stock salt by Ben Sainsbury, doing business under the firm name of Sainsbury & Son, to Farmers & Ranchers Stock Salt Co., Inc., of Omaha, Nebraska, who in turn sold them to Samuel Bailey Harris, appellant, for $655.55. The acceptances were given on July 20, 1928, and purchased by Harris on July 30, 1928. The entire purchase price of the salt was $1,000, evidenced by three trade acceptances, of the same date, two for $350 each, maturing in sixty and ninety days, respectively, and one for $300 attached to the bill of lading and paid about August 18, 1928, by respondent upon delivery of the salt. Respondent paid the freight and was given 2,500 additional pounds of salt. He has disposed of a portion of the latter but has the remainder of the salt in his possession.

Respondent's defense is, that he was induced to order the salt by the promise of the agent of Farmers & Ranchers Stock Salt Co., Inc., to furnish him with certain merchandise to be used as premiums to stimulate sales and to furnish an agent of the company who would assist in the sale of the salt to farmers. That no merchandise as premiums

was sent him and no agent to assist in sales of salt appeared and that appellant purchased the trade acceptances with notice of this alleged fraud.

Insufficiency of the evidence to justify the verdict in several particulars is assigned as error, among others, that appellant had no knowledge or notice of any fraud or fraudulent representations perpetrated or made in, or connected with the transaction in which the bills originated, and had no knowledge or notice of any infirmities of the bills, or any defect in the title of the payee therein named.

C. S., sec. 5923, provides that to constitute notice of infirmity in the instrument the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, "or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The only evidence of knowledge of appellant as to the alleged fraud in the sale for which the acceptances sued on were given, is the testimony of respondent who testified that he received a letter from appellant "about the 26th—25th of July, and he asked me if I would send him a brief financial statement, and about five wholesale warehouses that I buy goods from." That he answered on the bottom of appellant's letter and mailed it back to him without keeping a copy. When asked what he said in the letter respondent testified, "He asked me for some references, and also a brief financial rating. Of course, my suspicions were aroused immediately, because I didn't receive the first premium; and I wrote back on the bottom to wait until he heard from me again, and as soon as I received the premium I would let him know; and it would be all right to go ahead and buy the papers, but not until I got this thing settled up." On cross-examination he stated that appellant said in his letter, above referred to, "He wrote and asked me if I could give him some business references, and a brief financial statement of my standing, as he was going to buy the paper, or notes from the Farmers & Ranchers Stock Salt Company."

The trade acceptances in question were negotiable instruments as defined by C. S., sec. 5868, which is section 1 of the Uniform Negotiable Instruments Law. (*Pacific States Automotive Finance Corp. v. Addison*, 45 Ida. 270, 261 Pac. 683.)

Appellant is presumed *prima facie* to be a holder of the acceptances in due course under the provisions of C. S., sec. 5926, *Pacific States Automotive Finance Corp. v. Addison, supra*, and as said in that case, "The holder of negotiable instruments is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance; he does not owe to the party who puts paper afloat the duty of active inquiry in order to avert the imputation of bad faith."

Clearly the evidence quoted (and it is all the evidence tending to support respondent's case on that point, appellant having expressly denied having any notice or knowledge of any infirmity of the paper purchased by him) is not sufficient to impart actual notice of the fraud charged here nor are the facts as to appellant's action in taking the two acceptances such as amount to bad faith on his part. The letter did not constitute notice of an infirmity in the trade acceptances. (*Farmers & Merchants' Bank of Wellsburg, Iowa, v. Nissen*, 46 S. D. 121, 190 N. W. 1014. See, also, *Reese v. Citizens' Bank of Roswell*, 22 Ga. App. 519, 96 S. E. 452; *Inland Mortgage & Loan Co. v. Cady*, 138 Wash. 52, 244 Pac. 123.)

Judgment reversed with directions to enter judgment in favor of appellant as prayed for in his complaint. (*Price v. Pace*, 50 Ida. 353, 296 Pac. 189.)   Costs to appellant.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.