688 P.2d 1180

GEBRUEDER HEIDEMANN, K.G., aka Gebr. Heidemann, K.G., a limited partnership, Wolfgang Kram, Receiver in Bankruptcy for Gebr. Heidemann, Merchant, and Volksbank Bitburg, E.G., a corporation, Plaintiff-Appellants, Cross-Respondents,

v.

A.M.R. CORPORATION, an Idaho corporation, Defendant-Respondent, Cross-Appellant,

and

Dale Bowen, Defendant.

No. 14779.

Supreme Court of Idaho.

Sept. 27, 1984.

Richard T. St. Clair, St. Clair, Hiller, Wood & McGrath, Idaho Falls, for plaintiffs-appellants, cross-respondents.

J. Kent Jolley, Rexburg, for defendant-respondent, cross-appellant.

BAKES, Justice.

Panworld, a Utah corporation and bicycle retailer, contracted to buy "between 5,000 to 8,000" bicycles from Heidemann, a German manufacturer. As consideration, Panworld signed and accepted six "trade acceptances" which came due at various intervals between October 13, 1974, and April

26, 1975. Defendant, A.M.R. Corporation, an Idaho corporation, did not sign or endorse the six trade acceptances, but in a collateral agreement A.M.R. guaranteed Panworld's payment of the trade acceptances up to $250,000 by transferring into escrow a promissory note secured by a mortgage on property located in Madison County, Idaho. A.M.R. as guarantor was to receive $1.50 for each bicycle purchased. Heidemann shipped the bicycles valued at $500,000, but Panworld defaulted on each trade acceptance as it came due. On November 6, 1974, after default on the first trade acceptance, the escrow agent holding the mortgage was instructed to record the mortgage, which it did.

Volksbank, the assignee of Heidemann's receiver in bankruptcy, brought this action to foreclose on the mortgage and collect $250,000. Both parties moved for summary judgment and supported their motions by affidavits. A.M.R. supported its motion with an affidavit from Robert Weeks, president of Panworld, stating that he had entered into a subsequent agreement modifying the price and payment terms without the consent of A.M.R., the guarantor. A.M.R. also produced two telexes purportedly showing the offer and acceptance of the alleged modified agreement. The first telex from Weeks to Heidemann, dated December 5, 1974, after giving an optimistic sales forecast predicated upon Heidemann giving Panworld a 15% price discount, states:

> "Agreement can be written if we sell bikes faster than projections show, we will also pay sooner.
>
> . . . .
>
> "15% discount would allow a payment schedule as follows:
>
> | | |
> |---|---|
> | Dec. 31 | $100,000 |
> | Mar. 31 | $125,000 |
> | Apr. 31 | $191,500 |
>
> . . . .
>
> "I hope this will help."

The second telex in response, from Heidemann's receiver in bankruptcy, states:

> "Heidemann informed me that you have had discussions ... regarding a new way

of payment [of] your accounts to Messrs. Gebr. Heidemann. ... As official appointed receiver I am the only person to negotiate with your company and I am prepared to accept your proposal discussed with Mr. R. Heidemann regarding a 15% discount if you agree to the following terms:

"Payments will be ... made on

| | |
|---|---|
| Dec. 31.74 | 100,000 US Dollar |
| March 31.75 | 125,000 US Dollar |
| April 30.75 | 191,500 US Dollar |

"In cash by ... means of a cheque, drafts will not be accepted.

. . . .

"Would you please confirm and accept this letter. ..."

The record does not contain any response to this telex.

Plaintiff Volksbank filed a motion for summary judgment supported by affidavits from former counsel and the receiver in bankruptcy, stating that no modification agreement had been entered into. Plaintiffs claimed that the consent of the guarantor A.M.R. was a condition of the proposed modification, and the consent was never given. A proposed modification in November, 1974, expressly required A.M.R.'s consent, but the modification was never executed by A.M.R. In a letter dated October 31, 1974, to A.M.R., plaintiffs state:

"Volksbank Bitburg does not want to release or in any manner disturb the guarantee which you made of the payments to the sum of $250,000. Pan World International Inc. has proposed delayed payments. It may be that the bank will accept the same BUT ONLY AFTER A.M.R. corporation had agreed ...."

Plaintiffs argue that such evidence supports their allegation that A.M.R.'s consent was a term of any proposed modification agreement. Plaintiffs also argue that the letter acts as a "reservation of rights" against A.M.R. under I.C. § 28–3–606(2).

The district court held that the telexes "conclusively demonstrated" an agreement which modified the bicycle purchase terms without the consent of A.M.R. and thereby released defendant A.M.R. as guarantor. Accordingly, the district court denied summary judgment to plaintiffs and granted summary judgment to defendant only on the grounds of the agreement modification. Plaintiff appeals the grant of summary judgment to the defendant, arguing that a material issue of fact exists as to whether the modification agreement was ever consummated. Plaintiffs further appeal the denial of summary judgment to them, arguing that even if the modification agreement was entered into it does not discharge A.M.R. because the modification agreement did not injure the defendant; the plaintiff also argued that the modification agreement fails for lack of consideration. The district court did grant partial summary judgment to plaintiffs against all of defendant's other defenses.

Defendant has cross appealed, arguing that the suit is barred by the statute of limitations and also that the suit is barred by the failure of Volksbank to obtain a certificate of authority to transact business in Idaho.

We reverse the grant of summary judgment to defendant on the issue of whether defendant is released by the alleged modification agreement, and we affirm the denial of summary judgment to plaintiffs on the same issue. We further affirm the grant of partial summary judgment to plaintiffs on the issues of statute of limitations and certificate of authority. We remand this case to the district court for further proceedings consistent with this opinion.

At the threshold of discussing the issues we note that the underlying obligation between Panworld and Heidemann is a sales contract for the purchase of "goods." I.C. § 28–2–105(1). Contractual problems of formation, modification, consideration, and parol evidence between Panworld and Heidemann will therefore be governed by the Uniform Commercial Code—Sales. I.C.

§§ 28–2–101, –102.[1] However, the relationship between Heidemann, including its assignee, and A.M.R. Corporation is *not* governed by the Uniform Commercial Code—Commercial Paper. Although a "trade acceptance" could qualify as a negotiable instrument, *Harris v. Sainsbury*, 50 Idaho 502, 298 P. 360 (1931), A.M.R.'s liability does not arise out of the trade acceptances themselves, since A.M.R. did not sign or endorse the trade acceptances. I.C. § 28–3–401; *see also* §§ 28–3–415, –416. Rather, A.M.R.'s potential liability arises out of a collateral guaranty contract to which the common law of guaranty agreements applies. Neither does the Uniform Commercial Code—Commercial Paper apply to the promissory note given by A.M.R., since the note is conditional on the terms of the guaranty agreement and therefore does not qualify as a "negotiable instrument." I.C. § 28–3–104(1)(b); I.C. § 28–3–105(2)(a).

I

We first address the question of whether A.M.R. is entitled to summary judgment on the grounds that the principal debtor and creditor entered into a modification agreement without A.M.R.'s consent, thereby releasing A.M.R. as guarantor.

■ A motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Whether or not the modification agreement was consummated is a material issue, since it may have the effect of releasing the guarantor. The pleadings and affidavits must be construed in a light most favorable to plaintiffs since they are the party opposing the motion for summary judgment presently being considered. *E.g., Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Moss v. Mid-American Fire & Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982); *Palmer v. Idaho Bank & Trust*

*of Kooskia*, 100 Idaho 642, 603 P.2d 597 (1979).

Plaintiffs' affidavits by the German receiver in bankruptcy and former counsel allege that the modification was not entered into because the consent of A.M.R. was a term of the proposed agreement and such consent was never given. These allegations are supported by admissible evidence in the record in the form of a prior proposed written modification which expressly required A.M.R.'s consent and a letter to A.M.R.'s counsel which expressed that any modification require A.M.R.'s consent. Such allegations do not conclusively prove the plaintiff's claim that A.M.R.'s consent was required for the presently considered modification, but the allegations are entitled to positive inferences and effectively place in issue whether consent of A.M.R. was a term of the modification or a condition precedent to consummating the modification.

The telex which is the alleged acceptance states, "I am prepared to accept your offer ...," which can reasonably be construed as an offer for continued negotiations, not a present acceptance. Accordingly, the trial court erred in concluding that the record conclusively establishes that a modification was entered into.

Even if the proposed telexes did demonstrate conclusively a modification agreement, the writing does *not* purport to be the "final expression" of the parties' agreement. Therefore, parol evidence supporting the appellant's affidavits could show the failure in formation of the agreement or a "consistent additional term" requiring A.M.R.'s consent. I.C. § 28–2–202; *e.g., Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979).

■ Regarding the effect which a consummated modification agreement would have on a guaranty contract, the district court correctly stated the general principle of law which applies:

1. Although the Utah code may be applicable, we will cite for convenience to the Idaho Code, since both sales laws are uniform.

"[A] material alteration in the principal contract, when that alteration is made after the execution of the guaranty contract and without the consent of the guarantor, discharges the guarantor *if the material alteration injures the interest of the guarantor.*" 38 Am.Jur.2d, Guaranty § 81 (1968). (Emphasis supplied.)

However, the district court did not make the requisite finding that A.M.R. was injured by the alleged modification. A.M.R. argues that no injury need be shown because it is a "gratuitous" guarantor since it is not in the business of making guaranties and since it received no money from Panworld. However, A.M.R. concedes that as a part of the agreement to execute the guaranty for Panworld it was to receive $1.50 per bicycle. Without deciding whether a "gratuitous" guarantor must show injury, we hold that A.M.R. is not a gratuitous guarantor. It entered into the guaranty contract, having bargained to receive between $7,500 to $12,000. The president of A.M.R. testified by deposition that there is absolutely no family relationship between A.M.R. and Panworld which might imply an accommodation or favor on behalf of A.M.R. The most recent authority in 38 Am.Jur.2d Guaranty, § 81, p. 1089, states:

"The rule which is now supported in many cases requires classifying guarantors as either 'compensated' or 'gratuitous', *that is, gratuitous in the sense of 'accommodation.'* (Emphasis added.) See *Zoglin v. Layland,* 328 S.W.2d 718 (Mo.App.1959); *Magazine Digest Pub. Co. v. Shade,* [330 Pa. 487], 199 A. 190 (Pa.1938)."

Therefore, A.M.R. must show injury by a modification to the principal contract without its consent in order to be released from liability. *Cf. Ore-Ida Potato Products, Inc. v. United Pac. Ins. Co.,* 87 Idaho 185, 392 P.2d 191 (1964) (compensated surety must show injury from a material alteration in order to be released).

■ Material issues of fact existed as to whether the modification was consummated, whether A.M.R.'s consent was a term of the modification, and whether the modification injured the interest of the guarantor. The district court erred in granting summary judgment to defendant.

II

■ We next address the issue of whether plaintiffs are entitled to summary judgment. Plaintiffs argue that, viewing the second telex most favorably to the defendant, it shows at best a counteroffer since it proposes additional terms, and defendant makes no allegation or refers to no admissible evidence showing that the counteroffer was accepted. The applicable law states, "A written confirmation ... operates as an acceptance even though it states terms additional to or different from those offered." I.C. § 28-2-207(1); *Southern Idaho Pipe & Steel v. Cal-Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977); *Idaho Power Co. v. Westinghouse Elect. Corp.,* 596 F.2d 924 (9th Cir.1979). Viewing the pleadings and affidavits most favorably to defendant at this point, we must conclude that the second telex could have been a binding acceptance and that a material issue of fact exists as to whether or not the second telex is an acceptance. Plaintiffs argue further that even if the second telex is an acceptance, the modification is not binding for lack of consideration. However, the modification of a sales contract for the purchase of goods under the Uniform Commercial Code—Sales is binding without consideration. I.C. § 28-2-209(1).

■ Plaintiffs' final assertion, as a basis entitling them to summary judgment, is that its letter to A.M.R. dated October 31, 1974, acts as an "express reservation of rights" under the Uniform Commercial Code—Commercial Paper, I.C. § 28-3-606(2). That section allows the holder of a negotiable instrument to modify the obligation of the principal debtor, without releasing a co-signor as guarantor of the instrument, by an "express reservation of rights" against the guarantor. As stated above, the Uniform Commercial Code—Commercial Paper is not applicable to the guaranty contract between A.M.R. and Heidemann.

However, it appears that the "reservation of rights" doctrine contained in I.C. § 28–3–606(2) is a codification of the common law of suretyship and guaranty. "Whether the creditor releases the principal or grants him an extension of time, an express reservation will preserve his claim against the surety." Williston on Contracts, Contracts of Suretyship and Guaranty, § 1230, pp. 738–39 (1967). "[T]he surety is not discharged by a purported release of or extension of time to the principal debtor if the creditor reserves his remedies against the surety." Annot., 139 A.L.R. 85, 87 (1942). Both authorities quoted above include guarantors in their definition of "surety." Williston on Contracts, Contracts of Suretyship and Guaranty, § 1211, p. 683 (1967); Annot., 139 A.L.R. 85, 87 (1942). Therefore, the letter from Heidemann's counsel to A.M.R. could have the effect of reserving Heidemann's rights against A.M.R., but there is an issue of fact as to whether the letter was intended to act as a "reservation of rights" and whether it was intended to be effective at the time of the alleged modification agreement. The resolution of this issue is not appropriate for summary judgment.

██ Therefore, we cannot say that plaintiffs are entitled to judgment as a matter of law, and we affirm the district court's denial of summary judgment to plaintiffs.

## III

██ Respondent has cross appealed, claiming that plaintiff's suit is barred by I.C. § 5–214A, which states:

"5–214A. **Action to foreclose mortgage on real property.**—Within five (5) years:

"1. An action for the foreclosure of a mortgage on real property must be commenced *within five (5) years from the date of maturity*, as disclosed by the public record, *of the obligation* or indebtedness secured by such mortgage or by any indenture *or other instrument supplemental thereto*, as changed by extension, if any, of the time of maturity, filed for record before the expiration of said period of five (5) years. If the public record does not disclose the date of maturity, then the date of the execution of such mortgage or lien shall be deemed the date of maturity of such obligation or indebtedness.

...." (Emphasis added.)

Defendant's position is that: (1) the public record does not disclose the exact maturity date of the promissory note obligation; (2) hence, the date of signing the mortgage, April 8, 1974, is deemed to be the maturity date of the obligation; and (3) therefore, suit is barred since it was filed on October 1, 1979, more than five years after the deemed maturity date. We are not persuaded. "Maturity" is defined as "the date at which an obligation, such as the principal of ... a note becomes due." Black's Law Dictionary, 883 (Rev. 5th Ed.1979). Defendant correctly notes in its brief that, up until the first date of default by Panworld, the obligation was not mature. Without a default by Panworld, the plaintiff would have had no cause of action to foreclose the mortgage. Default or nonperformance by the principal debtor is required to mature a cause of action in contract against a guarantor. *See Durant v. Snyder*, 65 Idaho 678, 151 P.2d 776 (1944). The mortgage as recorded in the public record is not silent on the subject of maturity. It recites, "This mortgage is intended to secure payment of a certain promissory note ... to wit: ... to fall due and payable in the event of default ... under the terms of that certain Agreement to Guaranty Payment of Trade Acceptances and Instructions to Escrow Agent of even date." This statement, along with the name and address of the mortgagee seems to be substantial compliance of notice to the public of the maturity date, since the means exist to ascertain the date of maturity or whether the obligation is not mature. The default on the first trade acceptance occurred on October 13, 1975, and this suit was filed within five years of that date. Accordingly, we hold that the statute of limitations does not bar foreclosure of the mortgage, and we affirm the district court's denial of

defendant's motion for summary judgment on the statute of limitations issue.

 In any event, even if we accept defendant's argument barring foreclosure of the mortgage, plaintiffs are still entitled to summary judgment on the statute of limitations question. Although plaintiffs are required to pursue the obligation in "but one action" and satisfy the debt primarily from the foreclosure of the mortgage, I.C. § 6–101; *Eastern Idaho Production Credit Ass'n v. Placerton, Inc.,* 100 Idaho 863, 606 P.2d 967 (1980), if the mortgage given as security is defective or has become valueless, the mortgagee, assuming it prevails on the merits, is still entitled to a judgment on the promissory note which is independent of the mortgage security, I.C. § 6–101; *Edminster v. Van Eaton,* 57 Idaho 115, 63 P.2d 154 (1936). Therefore, this suit is not barred by the statute of limitations, and we affirm the district court's grant of summary judgment to plaintiffs on this issue.

 Finally, respondent cross appeals arguing that this suit is barred by I.C. § 30–1–124, which states:

"No foreign corporation [nor assignee of such corporation] transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state ...."

Defendant correctly points out that Volksbank is the real party in interest and has not obtained a certificate of authority. However, the record does not indicate that Volksbank has ever transacted business in Idaho as defined by I.C. § 30–1–106, which states:

"[A] foreign corporation shall not be considered to be transacting business in this state for purposes of this act by reason of ...

....

"(a) maintaining or defending any action or suit ...

....

"(g) ... acquiring, indebtedness or mortgages or other security interests in real or personal property.

"(h) securing or collecting debts or enforcing any rights in property securing the same."

Not having transacted business in Idaho, as defined in the statute, Volksbank is not required to obtain a certificate of authority before maintaining this action. We affirm the district court's grant of summary judgment to plaintiffs on this issue.

Affirmed in part, and reversed in part, and remanded for further proceedings.

Costs to appellant. Any award of attorney fees on appeal to be determined by the trial court upon final resolution of the case after remand.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.