MR. JUSTICE SHEEHY,
concurring:
Melvin A. Barber is due a more extended discussion in this case, because the statutes applying to suretyship in this state seem to require a result in his favor. That he does not recover requires a deeper look at the law.
The statutes upon which Barber relies are these:
“28-11-401. Surety defined. A surety is one who, at the request of another for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefore.
“28-11-412. Exoneration of surety. A surety is exonerated:

(t

“(2) To the extent to which he is prejudiced by any act of the creditor which will naturally prove injurious to the remedies of the surety or inconsistent with his rights or which lessens his security;
“28-11-418. Surety entitled to benefit of security held by creditor or ‘cosurety.’ A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor or by a cosurety at the time of entering into the contract of suretyship or acquired by him afterwards, whether the surety was aware of the security or not.”
Under the facts of this case, the security agreement signed by Barber to secure the promissory note to the Bank of Old Saloon, Inc., was secured by a liquor license under which Old Saloon, Inc., operated. It appears from the facts that the liquor license was actually owned by the Becks and that the Becks had a lien upon the liquor license, even though held by the Bank as security for the principal debt. Thus when the default of Old Saloon occurred, the Bank returned the liquor license to the Becks for a payment by them to the Bank of $6,000, which was applied to Old Saloon’s debt. It is Barber’s contention that the liquor license was actually worth $60,000 to $70,000 which, if applicable to his surety agreement, would completely exonerate him under the statutes above recited.
The Restatement, Security, treats of the liability of the surety where the creditor has security from the principal obligor. Section 132 states:
“Where a creditor has security from the principal and knows of the *250 surety’s obligation, the surety’s obligation is reduced pro tanto if the creditor:
“(a) Surrenders or releases the security or
“(b) Willfully or negligently harms it, or
“(c) Fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.”
The Restatement sets out the ordinary law that applies to the duty of a creditor to protect security given by the obligor in favor of a surety. This facet of the law is not singular. The same idea is expressed in the Uniform Commercial Code. If one party to an instrument under the U.C.C. has a right of recourse against another party to the same instrument, the holder of the instrument has a duty with respect to collateral given by the principal obligor on the instrument. Thus 30-3-606 provides:
“30-3-606. Impairment of recourse or of collateral.
“(1) The holder discharges any party into the instrument to the extent that without such party’s consent the holder:
“(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse . . .”
However, the party entitled to rely on the preservation of collateral under the U.C.C. can also waive his right thereto under § 30-3-606 (2), MCA:
“(2) By express reservation of rights against the party with a right of recourse the holder preserves:
“(a) All his rights against such party as of the time when the instrument was originally due; and
“(b) The right of the party to pay the instrument as of that time; and
“(c) All rights of such party to recourse against others.”
Thus a party to commercial paper under the Uniform Commercial Code can expressly waive his rights to the preservation of collateral which would otherwise favor him. Courts have extended the same waiver possibility to the case of sureties. For example, it was held in American Bank of Commerce v. Covolo (1975), 88 N.M. 405, 540 P.2d 1294 that where a grantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain of the failure of the creditor to perfect the security interest therein in the first instance. In Idaho, in a case where the creditor modified a sales contract by agreement with the *251 principal debtor without the consent of the surety, it was held that the surety remained liable on his obligation of suretyship where the creditor had expressly reserved his rights:
“Plaintiffs’ final assertion, as a basis entitling them to summary judgment, is that its letter to A.M.R. dated October 31,1974, acts as an ‘express reservation of rights’ under the Uniform Commercial Code — Commercial Paper, I.C. § 28-3-606(2). That section allows the holder of a negotiable instrument to modify the obligation of the principal debtor, without releasing a co-signor as guarantor of the instrument, by an ‘express reservation of rights’ against the guarantor. As stated above, the Uniform Commercial Code — Commercial Paper is not applicable to the guarantee contract between A.M.R. and Heidemann. However, it appears that the ‘reservation of rights’ doctrine contained in I.C. § 28-3-606(2) is a codification of the common law of suretyship and guaranty. ‘Whether the creditor releases the principal or grants him an extension of time, an expressed reservation will preserve his claim against the surety.’ Williston on Contracts, Contracts of Suretyship and Guaranty, § 1230, pp. 738-39 (1967). ‘The surety is not discharged by a purported release of or extension of time to the principal debtor if the creditor has reserved his remedies against the surety’. . .”
Gebrueder Heidemann, K.P. v. A.M.R. Corporation (1984), 107 Idaho 275, 688 P.2d 1180, 1185, 1186.
In Montana, it is the law that the measure of a surety’s obligation to the creditor is that of the principal obligor. This Court stated in Gary Hay and Greg Company Inc. v. Carlson (1927), 79 Mont. 111, 123, 255 P.2d 722:
“ ‘A surety is one who at the request of another for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some acts in favor of the third person,’ etc. (Section 8195, revised 1921.) Such third person may enforce the obligation at any time before the contract is rescinded (Sections 74, 72, above.) Where the bond is given for the performance of a contract, the bond is made with relation to the contract and as part of it. [Citing cases.] The two are to be construed together. [Citing cases.] The obligation of the surety is, therefore, coextensive with and measured by the promises of the principal (the contractor here) to the obligee (the state) appearing in the contract, provided proper expressions are used in the bond, and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as part of the contract. [Citing cases.]”
*252 In this case, in the Commercial Surety Agreement which Barber signed, he agreed that his obligation as surety to the Bank “is not dependent on any default of the borrower or on any intervening contract or event of any nature whatsoever,” and that the “Bank may release any collateral given to Bank by borrower, with or without the substitution of new collateral.” By that body language Barber expressly agreed that the Bank could deal with the collateral offered by the principal obligor as the Bank saw fit and by that language he further waived his right against impairment of collateral held by the creditor. The District Court here was constrained to interpret the Commercial Surety Agreement as it would any other contract:
“28-11-403. Interpretation of contract suretyship. In interpreting the terms of a contract in suretyship, the same rules are to be observed as in the case of other contracts.”
In this case, Barber has contended he was a gratuitous surety, and as such was entitled to the benefit of the doctrine of strictissimi juris, that is, that as a gratuitous surety, the Commercial Surety Agreement would be construed in his favor. There appears some doubt here as to whether Barber was indeed a gratuitous surety, but even if he were, his express waiver militates against him.
“. . . [I]n the instant case, we need not adopt a rule of construction weighted against [the creditor]. In this case the suretyship agreement was drafted by the Bank . . . Viewing the language of the Guarantee Agreement most strongly for the [surety] still compels the conclusion that they assumed the risk that there could be a failure, neglect or omission to realize upon . . . the security.
“The import of that language is clear and there is simply no rule of construction that can ascribe a different meaning to those words.” National Bank of Washington v. Equity Investors (1976), 86 Wash.2d 545, 546 P.2d 440, 446-447.
For the foregoing reasons therefore I concur with the majority that upholds the summary judgment in this case.