[Civ. No. 5125. Second Appellate District, Division Two.—April 26, 1928.]

LEWIS A. MONROE, Appellant, v. J. GORDON SWITZER et al., Defendants; PAULEY OIL COMPANY (a Corporation), Respondent.

Chauncey Gardner for Appellant.

George L. Greer, George W. Seith and Louis P. Pink for Respondent.

STEPHENS, J., *pro tem.*—This case arose from a collision between a truck driven by the defendant Switzer and owned by the defendant Pauley Oil Company, a corporation, and plaintiff's Studebaker automobile. Dismissal was entered as against all of the defendants except Pauley Oil Company. The action was tried by the court without a jury and judgment rendered that plaintiff take nothing and that the defendant corporation recover its costs.

The facts are as follows: The truck was traveling easterly on Whittier Boulevard, a thoroughfare of Los Angeles County, while the Studebaker, a passenger car, was proceeding in the opposite direction upon the same road. The machines collided west of the westerly line of Guirado Road, an intersecting street, and north of the northerly line of the traveled thoroughfare. Both cars nosed together northerly and cut three or four feet into the porch of a small grocery-store at a point 19 feet west of the westerly pavement line of the intersecting street and 21 feet north of the northerly pavement line of the thoroughfare. There was testimony that the automobile was traveling 12 or 14 miles an hour and the truck between 20 and 25 miles per hour, and that the truck driver gave a signal for a left-hand turn. There was testimony also that the truck was on the left side of the street when about 60 feet from the intersection, and that it left the paved portion of the thoroughfare about 20 feet from the west line of Guirado Road and continued northerly to the point of collision a few feet from the store porch, into which both machines ploughed.

The conclusion is compelling that the driver of the truck was "cutting the corner," or, to quote from a statement made from the bench by the trial judge: "The truck, as far as the evidence shows—and of course for the purpose of a nonsuit, it must be taken as strongly as possible for the plaintiff—the evidence shows that the truck turned before it reached the intersection; that it, to use the ordinary ex-

pression, cut the corner, in other words, had not come to or passed beyond the point where the button would have been had there been a button indicating the center of the intersection; in other words, the truck turned and cut the corner and got off the highway altogether." One witness, driving his own car, testified as follows: "But my attention was drawn to him [the truck driver] by the fact that he seemed to be quite a considerable distance this [the westerly] side of the intersection, and I was naturally curious to know what he was doing; and when I saw him, as it were, heading for the building, then I looked again, and it occurred to me at that time he was in the middle of the road, that his truck was in trouble; it looked as though he was having trouble with his truck; then my attention was drawn to my own car. I wanted to get past." Another witness testified: "Q. Was the truck on the north side of the Whittier Boulevard when you first noticed it? A. He was coming on the Camino Real, the Real Road, in front of the pool room. Q. Was he upon the north or south side of the road? A. To the north. He was leaning to the north, to the left. Q. He was, then, driving east on the wrong side of the road, the left-hand side of the road; is that right? A. He was coming wrong then. He was out of his route. Q. He was out of his route? About how far back was that from the intersection of Guirado road? A. Oh, more than 60 feet. Q. When did you first see the Studebaker automobile? A. Precisely I saw it—I was sitting in front of the porch just out, and I saw the Studebaker and I concluded she was going to pass, and in getting to the store the truck driver made a quick movement and that caused a collision—that is what occasioned the accident or the collision." On cross-examination the same witness testified: "A. I could see the driver [of the truck], yet, at the wheel, I certainly did. Q. Did he have both hands on the wheel or was he fooling with the gears? A. No, he was working with the wheel, as near as I can remember." An eye-witness to the collision testified: "Q. And then she [the driver of the Studebaker] turned northwest so as to land up in front of the store at the time that she and the truck collided? A. Yes. She went off the road into the dirt." The driver of the Studebaker testified that she was rendered unconscious by the collision and did not recover for about two

weeks and does not remember anything regarding the accident. There was testimony from other witnesses, no part of which is inconsistent with that above quoted or referred to. Defendant offered no evidence.

The trial court found in paragraph II of its findings: "That the same [the truck] was neither carelessly or negligently operated . . . or [operated] in such a manner as to cause said truck to collide with plaintiff's automobile or to damage the same." And in paragraph III: "That neither the carelessness or negligence of the defendant corporation was the proximate cause of the collision or the damage suffered by plaintiff."

The evidence as it stands shows the truck to have been traveling westerly at about 20 miles per hour, and then, with a turn to the left, heading practically at right angles to the road, straight at the front of the store. It places the Studebaker car on its own right and proper side of the road, traveling at a lawful speed and turning to the right off the road. There is no word of criticism with the operation of the Studebaker, and the court finds that it was operated without negligence. As the evidence stands, no reasonable construction thereof could produce any other conclusion than that the collision would not have occurred except for the turning of the truck in this unusual manner and place, and unless there is something to excuse these acts—which as it appears from the testimony amounted to gross carelessness and a violation of section 129 of the Motor Vehicle Act as well—there is no evidence supporting that part of findings Nos. II and III above quoted.

Upon the plaintiff's resting counsel for defendant made a motion for nonsuit, whereupon the trial judge made an extended statement which closed with the following: "Now I will say very frankly that while I am to some extent in doubt upon a motion for a nonsuit, yet if the defendant were to simply rest the case on the evidence now before the court, I would have to find for the defendant, solely because the plaintiff has not shown any negligence." Counsel for respondent apparently "took the hint" from these remarks that he need not put on any testimony in order to win the case, and rested without offering any.

 In our opinion there is no escaping the conclusion that the evidence referred to established negligence. While

we are cognizant of the rule that courts of appeal will not disturb a finding where there is more than an inconsequential conflict, a thorough review of the evidence convinces us that no such conflict exists in this case, and that the entire circumstance points with certainty and unavoidably to the fact that such negligence was the proximate cause of the accident. "When evidence is conflicting the question of negligence is one for the jury to determine under proper instructions from the court; but where the facts are undisputed, and the dictates of common prudence point to only one reasonable conclusion, the question is then one of law for the court." (*Smith* v. *Associated Oil Co.*, 53 Cal. App. 143 [199 Pac. 880].) We think there should be a new trial and that the issues of negligence and contributory negligence, as well as all other issues raised by the pleadings, should be considered and determined.

Judgment reversed.

WORKS, P. J., Concurring.—I concur in all that is said in the foregoing opinion and in the conclusion reached by it, but I think the conduct of the trial judge, as shown by his remarks in dealing with the motion for a nonsuit, should not pass unnoticed. As he felt a doubt upon the question as to the disposition of the motion, he should have denied it (*Bush* v. *Weed Lumber Co.*, 55 Cal. App. 588 [204 Pac. 25]). Instead of taking that course, however, he invited respondent to rest its case upon the evidence presented by appellant so that he might weigh what he considered to be conflicting evidence, a thing he could not do in considering the motion. Counsel quite naturally accepted this unusual invitation and withdrew the motion, with the result that, while a serious accident had occurred, a young woman had been badly injured, an automobile had been demolished, the plaintiff in an action to recover for the loss of the car was in moral effect denied a trial on the merits. He was also denied compensation for an admitted loss, one for which it was decided that his daughter, the driver of the car, was not responsible, a strange outcome, indeed.

In disposing of cases upon appeal it is usually necessary for courts of review to suffer in silence over exhibitions of the idiosyncrasies of some trial judges, but in the interests of justice it seems proper that silence be broken in the

present instance. We should take the time and the space necessary to condemn this novel method of making disposition of attempts to procure justice at the hands of the courts.

Thompson, J., concurred.