## SCOTT v. FOLSOM MORRIS COAL MIN. CO.

No. 18884. Opinion Filed Sept. 17, 1929.

J. B. Moore and Lydick, McPherren & Jordan, for plaintiff in error.

George Trice and Denver N. Davison, for defendant in error.

FOSTER, C. This appeal is from the district court of Coal county. The plaintiff in error, Katie Scott, who was plaintiff below, filed an action against the defendant in error, who is defendant below, alleging as a cause of action the negligent killing of her husband, Thomas Scott, while he was engaged in discharging his duties as district mine inspector of the state of Oklahoma in a coal mine near Phillips, Coal county, Okla., belonging to the defendant.

Plaintiff in error alleges in her petition that her husband's death was due to the negligent and careless acts of the defendant in failing to employ competent and qualified engineers to operate the engine pulling cars out of the mine, and to provide a safe cable for the use of hoisting the cars on which the deceased was riding, and its failure to provide a drag or tailboard to prevent the cars from running away in the event of a break in the cable. She further alleges that defendant failed to provide suitable and proper drum on which to wind the cable in

hoisting the trip on which her husband was riding; also to provide electric signals for the use in controlling the operation of the trip, and that this negligence on the part of the defendant caused or permitted the cable to stack on the drum, and that because of improper flanges about 15 rounds of the cable rolled off the drum causing some 90 feet of slack, and when the slack was taken up, the cable broke, the cars ran away down the slope, and caused the death of her husband.

The defendant answered by general denial and pleaded contributory negligence, and further pleaded that, at the time of the accident, the deceased was in control of the mine and all its operations were under his directions, and if there was a defect in the appliances, they were known to the deceased, or could have been known by the exercise of reasonable and proper care.

At a trial before a jury, the evidence disclosed that the deceased, Thomas Scott, as district mine inspector, was inspecting the mine of the defendant near Phillips, in Coal county; that after he had completed his inspection, and was ready to leave the mine, he asked to be taken out of the mine on what was known as the mantrip. This mantrip consisted of a string of cars operated by machinery which was used in hoisting the coal from the mines. By an agreement between the company and the employees, this string of cars was used to transport the men into the mine in the morning and out of the mine in the evening. While so transporting the men, this trip was equipped with safety devices, among which was a drag or tailboard, which, in case the cable broke, would catch in the ground and prevent the cars from running down the slope and causing an accident. There were also other safety devices. However, these safety devices were not used during the day for the hauling of coal out of the mine. After the men had been transported into the mine in what was known as the mantrip, the safety devices were apparently removed and the trip was afterwards used for the purpose of transporting coal and was called a coaltrip; and under the rules of the company and Chief Mine Inspector, no person, except the one in charge of the coaltrip, was permitted to ride upon the same during the day when hauling coal, and under the law of the state no employee was permitted to use the hauling road where hauling is done by machinery.

Just before noon on the day of the fatal accident, which was on the —— day of——, 1920, Thomas Scott requested the foreman of the mine to have the mantrip or coaltrip sent down for the purpose of carrying him out of the mine. Pursuant thereto, instructions were given and the mantrip or coaltrip, without the safety devices attached thereto, was sent down into the mine, and the deceased, Thomas Scott, and the foreman of the mine, got into one of the cars and a signal was given to bring them out of the mine. No different signal was given than in case coal was being hauled, and it does not appear that the engineer knew but what coal was being hauled. On these coaltrips or mantrips, there is what is called a rope rider who has control of the trip, and after this particular trip on which Thomas Scott was riding had advanced some distance, it suddenly stopped and began to run down the slope. It was afterwards discovered that this was caused by the cable not spooling properly on the drum, and the cable having slipped, causing a slack therein, the cars running back to take up the slack, the cable broke, and the cars ran wild down the slope. At the time the cars started to descend, the rope rider, sensing the danger, called out, "Watch out for your sore leg," which appears to be an expression to warn miners in case of danger. Thereupon, the foreman of the mine and the rope rider jumped off of the cars, but for some reason the deceased did not jump. The cars ran back into the mine, piled up at the bottom of the slope, killing Thomas Scott.

There was constructed parallel with this mantrip or coaltrip what was known as a manway, which was used for the purpose of ingress and egress in and out of the mine for the men during the day when the mantrip was being used for the purpose of transporting coal. This manway was also used for the purpose of taking mules in and out of the mine. It was constructed pursuant to and as provided by statute.

The jury returned a verdict in favor of the defendant, and from this judgment the plaintiff appeals, assigning, in addition to the order overruling the motion for a new trial, three assignments of error, as follows:

First. The trial court erred in giving to the jury the defendant's requested instructions numbered 1 to 4, inclusive, and Nos. 6, 7, and 9.

Second. That the trial court erred in excluding material, competent and admissible

evidence offered on the part of the plaintiff.

Third. That the trial court erred in refusing to admit the testimony of Lark Williamson, appearing on pages 53 to 62, inclusive, of the case-made.

This is the second appeal of this case, the first being Folsom Morris Coal Mining Co. v. Scott, 107 Okla. 178, 231 Pac. 512. On the first appeal the cause was reversed after a judgment in favor of Mrs. Scott in the sum of $10,000, because of the admission of certain testimony and the refusal to admit other testimony; also, on account of improper remarks of the counsel and court.

In support of the assignments, as above set out, the plaintiff argues the cause under nine propositions, the first proposition being that the court erred in giving defendant's reuested instruction No. 1, as follows:

"At the request of the defendant, I instruct you as follows: That Thomas Scott, the deceased, was what is known in law as a 'licensee,'' and the defendant owed him no duty except that of not willfully injuring him or willfully permitting him to be injured."

Under this proposition, both the plaintiff and defendant cite many authorities defining a licensee, and what it takes to constitute the same, pointing out the different classes of licensees. The argument and authorities under this proposition are taken from many states and are very interesting and instructive. They are based principally upon the duty of the owner of property to one who comes upon the property as a custom officer or a police officer or fireman, and an attempt is made to define the distinction between one who is a licensee without invitation and one who is a licensee by express or implied invitation of the owner, or by authority at law.

However, it appears to us that for the purposes of this case, Folsom Morris Coal Mining Co. v. Scott, supra, has decided the status of the deceased. The first and second paragraphs of the syllabus of that case are as follows:

"An assistant mine inspector, under the provisions of section 7554, Comp. Okla. Stat. 1921, is a licensee when in the discharge of his duty in inspecting a mine, and in the absence of statute, the owner of the mine owes him no duty other than not to let him run upon a hidden peril or wantonly or willfully cause him harm."

"Under the provisions of sections 7554 and 7557, Comp. Okla. Stat. 1921, it is the duty of. the owner, lessee, or agent of a mine to furnish to such inspector the means necessary for entry and inspection. This contemplates reasonably safe means for entering and inspecting such mine."

From the above-quoted paragraphs, and from a reading of the entire opinion, it seems clear that the status of Thomas Scott has been definitely fixed as that of a licensee, and that the defendant owed him no duty other than not to let him run into a hidden peril or wantonly or willfully cause him harm, except as provided by statute, and that our statute (sections 7554 and 7557, C. O. S. 1921) provides and contemplates a reasonably safe means of ingress and egress and for inspecting the mine. This appears to be the only statute which imposes a duty upon the defendant in so far as the inspector is concerned.

From an examination of the general instructions, we find that the case of Folsom Morris Coal Mining Co. v. Scott, supra, was followed by the trial court, and the substance of the holding concerning the duty the defendant owed the deceased was contained in the general instructions, and then, at the request of the defendant, the court gave in addition the instruction as above set out. This instruction, in substance, tells the jury that the defendant is under no obligation to the deceased except not to willfully injure him or willfully permit him to be injured, and makes no exception as provided for in our statute.

It was held in the first appeal that the refusal to give this identical instruction, or one identical in meaning, was not error, and therefore plaintiff argues that the giving of the same in this case is manifest error. Assuming that the general instructions on this particular point are correct, and we must so assume because no objections were taken thereto, and from an examination of the same they appear to state the law, this requested instruction seems, at least, to be somewhat contradictory of the original instruction. It is well settled that where two instructions contain inconsistent propositions, the cause will be reversed, for the reason that the court is unable to tell which the jury followed and which it ignored. First Nat. Bank v. Nolen, 59 Okla. 20, 157 Pac. 754; Folsom Morris Coal Mining Co. v. Scott, supra.

However, before deciding whether or not the giving of the above instruction was reversible error, we deem it advisable to consider, in connection therewith, the alleged error of the court in giving certain other in-

structions, which are contained in plaintiff's propositions numbered 2, 3, 4, 5, and 6; said requested instruction No. 2 being as follows:

"2. That in no case shall men be permitted to travel to and from their work on hauling roads where hauling is done by machinery, and where such hauling is done, there shall be a manway provided for men to travel to and from their work. Such manway shall be six feet in width and five feet in height, and shall be kept clear of all obstructions and properly timbered.

"So, in this case, if you find that the defendant had provided a manway in compliance with the law, then, in that event, it was the duty of the deceased to travel such manway, and if you should find that his failure to travel such manway caused or contributed to cause his death, then you should find for the defendant."

Requested instruction No. 3 concerns contributory negligence, and is no doubt objectionable, as are some of the others.

From a careful reading of the above instructions, and especially the one quoted, under the facts in this case, we think the same amounts practically to an instruction to the jury to return a verdict in favor of the defendant. Certainly, under these instructions and under the facts in the case, if any other verdict had been returned, the trial court would not have permitted it to stand.

There is no contention in this case but what a manway was constructed parallel to the mantrip or coaltrip on which the deceased was killed. That this manway was constructed as provided by the the statutes of the state of Oklahoma is nowhere denied, and is proven beyond question, and, being so constructed, it must be assumed that the same was a safe manner of ingress and egress from the mine. Section 7554, Comp. Okla. Stat. 1921, provides that the owner, lessee, or agent of a mine is required to furnish the means necessary for the entry and inspection of the Chief Mine Inspector or district inspectors, and the case of Folsom Morris Coal Mining Co. v. Scott, supra, as above indicated, holds that this necessarily contemplates a reasonably safe means of entering and inspecting said mine, which, of course, also contemplates a reasonably safe means of egress from the mine.

The law of this state (section 7607, C. O. S. 1921) provides that employees going to and from their work shall not be allowed to travel on hauling roads where hauling is done by machinery, and, pursuant to that law, the chief mine inspector and the defendant company have promulgated rules and regulations, which, according to the testimony, were written and posted many times, to the effect that no person, except those in charge of the trip, should travel the mantrip or coaltrip during the time that it was being used for transporting coal in and out of the mine. The testimony, unquestionably, shows that the deceased in this case knew of these rules and regulations and was familiar with the law, or by the exercise of reasonable diligence should have been familiar with said rules and with the law governing the same.

By sections 7554, 7555, and 7556, Comp. Okla. Stat. 1921, and pursuant thereto, according to the customs and rules of the mining industry and particularly this mine, it is provided that when an inspector was present in the mine, he was in absolute control of the same, in so far as necessary to remedy any dangerous conditions, or to prohibit using of defective machinery. His word was the law as to such conditions. He could even stop the entire operation if he so desired, and his orders must be obeyed by owner and employee alike.

Under the circumstances in this case, we are of the opinion that it cannot be disputed that a safe means was provided for the ingress and egress of the mine inspector, to wit, the manway. Assuming, therefore, without deciding, that the machinery and equipment on the mantrip or coaltrip were defective, we cannot see how under the circumstances in this case, the defendant owed the deceased any responsibility of keeping the mantrip in reasonably good repair for the purpose of transporting him out of the mine after he had completed his inspection. The contention of the plaintiff is that the defendant did not furnish the deceased a reasonably safe means of egress from the mine. With this contention we cannot agree. The undisputed testimony is that a safe way was furnished, to wit, the manway.

While contributory negligence and assumption of risk under section 6, article 23, of the Constitution, are questions of fact to be submitted always to a jury, this does not apply to primary negligence, and, where there is no evidence reasonably tending to show that the defendant is guilty of negligence, it is error of the trial court to submit the issue to a jury. Midland Valley R. R. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088. And if the evidence is such that reasonable men might reach different conclusions as to the negligence of the defendant, the question of negligence is one for the jury. But where

the evidence shows that the defendant had breached no duty it owed the plaintiff, and is such that all reasonable men must reach the same conclusion as to negligence or want of negligence on the part of the defendant, it becomes a question of law for the court. Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 Pac. 314. There are numerous cases in Oklahoma to the same effect.

In the case at bar, it appears to us that, under the rule as established in the case of Folsom Morris Coal Mining Co. v. Scott, supra, and the admitted facts in this case, reasonable men could not differ on the proposition that safe means of egress from the mine were furnished the deceased by going by way of the manway.

This being the case, the question of whether or not the instructions given were erroneous becomes immaterial under the harmless error doctrine as announced in section 2822, Comp. Okla. Stat. 1921, and in the case of Keys Commission Co. v. Beatty, 42 Okla. 721, 142 Pac. 1102, in substance, as follows: Where the undisputed facts in a case show that the prevailing party was entitled, upon his request, to an instruction directing the jury to return the verdict that was returned, and that no other verdict could have properly been rendered under the undisputed facts,—errors, if any, of the trial court in giving instructions are harmless.

It is next contended that the court erred in striking out the testimony of Miller D. Hay. This testimony was to the effect that it might be necessary in making a proper inspection of the mine to travel the mantrip to inspect the slope on that trip. We do not believe it was error to exclude this testimony, because the evidence taken as a whole shows that the deceased had completed the inspection of the mine and took the mantrip merely as a means of egress, and not for the purpose of inspection. The testimony shows that the inspection was completed at the time he entered the mantrip, and it is unquestioned that there was a safe means of going out of the mine by way of the manway.

The next proposition argued by plaintiff is the refusal of the court to admit the testimony of one Lark Williamson taken at the first hearing in this case. It was agreed that the record of testimony in the first trial might be admitted as evidence on second trial. But the evidence of this witness was presented in rebuttal, and the court refused the same on the ground that it was not proper rebuttal.

We have carefully examined the testimony and are unable to say that the court abused its discretion in refusing the testimony on the ground that it was not proper rebuttal. But regardless of whether the court abused its discretion, the testimony appears in the record, and we have examined the same, and its only effect would be to tend to show that the defendant was negligent in not providing suitable machinery and equipment in the mantrip for the purpose of transporting the deceased out of the mine, and, under our view as above expressed, this assignment becomes immaterial.

From a consideration of the entire record, we do not believe that any substantial error was committed by the court, and that the verdict of the jury is supported by the evidence, for which reasons the judgment of the trial court is sustained.

REID, LEACH, JEFFREY, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.