(No. 5465. February 12, 1931.)

J. H. PRICE, Appellant, v. PRESLEY D. PACE, as Sheriff of Cassia County, Idaho, and FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation, Respondents.

[296 Pac. 189.]

S. T. Lowe, for Appellant.

T. M. Morris, for Respondents.

VARIAN, J.—On September 13, 1925, appellant commenced an action in claim and delivery in the district court

for Cassia county against one E. R. Russell for possession of a partly threshed crop of wheat grown during the year 1925 upon certain lands in said county. At the same time appellant delivered to the sheriff a proper affidavit and undertaking in said action, together with an order indorsed on said affidavit by attorney for appellant requiring the sheriff to take the property from defendant. (C. S., secs. 6757, 6758, 6759.) Thereafter, the sheriff made the following return, to wit:

## "RETURN ON AFFIDAVIT OF CLAIM AND DELIVERY.

"Sheriff's Office,

"County of Cassia,—ss.

"I, P. D. Pace, Sheriff of the County of Cassia, State of Idaho, hereby certify and return, that on the 15th day of September, 1925, I executed the order indorsed hereon, for delivery of the personal property mentioned in the within affidavit, by taking possession of the same, to-wit:

300 sacks wheat

8 stacks wheat not threshed,

and at the same time I delivered to the defendant, E. R. Russell, a copy of the within affidavit and order, and undertaking duly approved by me, and the defendant having failed to except to the surety therein, and also having omitted to require a return of said property, and no other person than the defendant having made claim thereto, I did at the expiration of the time prescribed by the statute for seeking such delivery and making such claim, to-wit: on the 25th day of September, 1925, deliver 116 sacks of wheat and one stack of wheat, not threshed, to the plaintiff, but was unable to deliver the entire amount, as by said order I am commanded, owing to the fact that three hundred sacks of said wheat were taken from the custody of the sheriff's keeper.

"Dated this 2d day of October, 1925.

"P. D. PACE,

"Sheriff, Cassia County, Idaho.

"By STEVE MAHONEY,

"Deputy.

"Sheriff's Fees:

Return ..................................... .40
Affidavit ................................. 1.00
Mileage ................................... 4.00

5.40."

Judgment was entered April 9, 1927, in favor of appellant for the possession of all the wheat mentioned in said return.

This action was brought by plaintiff in the claim and delivery action against the sheriff and the surety on his official bond to recover the value of the 300 sacks of wheat not delivered. The cause was tried to a jury and resulted in a verdict and judgment for defendants from which plaintiff appeals.

The facts concerning the sheriff's taking and his possession of the property mentioned in his return are undisputed and are substantially as follows: Price, plaintiff in the claim and delivery action, in the forenoon of September 15, 1925, accompanied Deputy Sheriff Mahoney to the farm known as the Kelly place, resided upon and farmed by Russell, the defendant in said action, as a tenant. After serving copies of the affidavit, etc., in claim and delivery, upon defendant Russell, the deputy sheriff proceeded three-quarters of a mile southwesterly to the Gray place, where one W. H. Gibson, aged seventy years, was at work in the field. Of his own initiative and without written instructions from Price, the deputy appointed Gibson "keeper" of the wheat, including the 300 sacks now in controversy, at that time piled up in a 160-acre field on the Kelly place, not more than 300 yards from the house occupied by Russell. The large field was inclosed by a fence, but there was no shelter

for, nor inclosure around, the grain itself. Gibson, the keeper, resided on a farm one mile south and one mile west from the Kelly place. He returned home to sleep each night after working all day at the Gray place. The wheat was visible from his residence but not from the Gray place. Gibson did not see the grain until the day after he was appointed keeper and never, at any time, went right to the grain or counted the sacks. He testified that he passed near it nearly every day. Neither the sheriff nor his deputy went again to the place where the grain was piled until September 25, 1925, when the grain other than the missing 300 sacks was delivered to appellant. Kelly, the owner of the farm, admitted taking a portion of the 300 sacks—he is not certain of the number—claiming a right to one-third of the entire crop. He does not remember the date he removed it. Gibson swears that the balance of the 300 sacks was removed in the night-time. The evidence is conflicting and uncertain as to the date, or dates, on which any of the wheat was removed from the Kelly place. It is undisputed that on the evening of September 24th, the sheriff, or his deputy, conversed with Price who was told he could have the grain since no claim had been set up by a third party (C. S., sec. 6766), no redelivery bond had been furnished by Russell (C. S., sec. 6761), and no exception taken to the sureties on the undertaking in claim and delivery (C. S., sec. 6760); that on the next day, September 25th, delivery of the property remaining in the hands of the sheriff was made to appellant.

C. S., sec. 6765, requires the sheriff who has taken property in claim and delivery to ''keep it in a secure place, and deliver it to the party entitled thereto, upon receiving his fees for taking, and necessary expenses for keeping the same.'' And the general rule is that a sheriff is required to exercise ordinary reasonable care and diligence in keeping property coming into his possession under process, or levy. (24 R. C. L., p. 938, sec. 31; 35 Cyc., p. 1670; *Birmingham v. Carr*, 96 Mo. App. 411, 197 S. W. 711; *State v. Stidham*,

1 W. W. Harr. (Del.) 8, 110 Atl. 680; see note F, 91 Am. St. 541.) And where the loss of possession of property so held is due to the negligence of the officer having it in custody, the owner has a right of action against him for his negligence. (24 R. C. L., p. 939, sec. 32; 35 Cyc., p. 1668; *Westberry v. Hand*, 19 Ga. App. 529, 91 S. E. 930; see Ann. Cas. 1912A, note, p. 1114.)

The sheriff is liable for any negligence of his deputy Mahoney in his official capacity for which the sheriff would be liable if committed by him. (*Federal Reserve Bank v. Smith*, 42 Ida. 224, 244 Pac. 1102; *Works v. Byrom*, 22 Ida. 794, 128 Pac. 551.) And the surety on the sheriff's official bond is liable for acts of the deputy done *virtute officii*. (*Federal Reserve · Bank· v. Smith, supra*.) The keeper, Gibson, was the agent of the sheriff and any negligence on his part in failing to safely keep, or guard, the property must be imputed to the sheriff. (*Bailey v. Security Trust Co.*, 34 Cal. App. 348, 167 Pac. 409.)

Measuring the sheriff's duty, as defined by the provisions of C. S., sec. 6765, under the rules above stated, in the light of all the evidence as to the possession and care of the property seized, we can come to no other conclusion than that he was flagrantly negligent in permitting the sacked wheat to remain upon the premises of the defendant in the claim and delivery action, unprotected, uninclosed and practically unguarded. (See *Western Bond & Mortgage Co. v. Chester*, 145 Wash. 81, 259 Pac. 13.) The facts being undisputed and pointing to only one reasonable conclusion, the question of negligence became one of law for the court. (See *Cooper v. Oregon Short Line R. R. Co.*, 45 Ida. 313, 262 Pac. 873; *Scott v. Folsom-Morris Coal·Min. Co.*, 138 Okl. 147, 280 Pac. 622, 625; *Monroe v. Switzer*, 91 Cal. App. 364, 267 Pac. 125; 45 C. J., p. 1289.)

Respondents contend that since appellant was entitled to possession of the wheat in controversy five days after the sheriff seized it, and failed to demand possession thereof from the sheriff promptly, the latter was not liable

for any loss occurring to the property after the lapse of said five days. We cannot accept this view. The statute (C. S., sec. 6765) imposes on the sheriff the duty not only of safely keeping the property but of delivering it to the party entitled thereto upon receipt of his fees for taking and keeping it. The sheriff may even hold the property until his fees are paid. (*Fox v. William Deering & Co.*, 7 S. D. 443, 64 N. W. 520.) Nor is the sheriff's liability released if he fails to deliver the property promptly on the very day a party is entitled to its possession. The claim and delivery action was pending when the sheriff turned over the wheat remaining in his custody on September 25, 1925. The affidavit and order indorsed thereon, together with the undertaking in claim and delivery, constitute the "process" (see C. S., sec. 3595; *Blumaur-Frank Drug Co. v. Branstetter,* 4 Ida. 557, 95 Am. St. 151, 43 Pac. 575; 5 Cal. Jur., p. 166) under which the sheriff took possession of the property in controversy and was still in force on said date. It is thought that the cases cited by respondents to the effect that a sheriff is not responsible for the loss of attached property occurring after judgment and loss of the attachment lien by reason of the lapse of time, where no execution issued and no demand was made for the possession of the attached property, are not in point.

Appellant's motion for an instructed verdict should have been granted, and in view of the conclusions reached, it is not deemed necessary to consider other assignments of error.

Since the evidence is uncontradicted as to the market value of the 300 sacks of wheat lost from the sheriff's possession, the amount of appellant's damages, with interest from September 25, 1925, may readily be calculated from the record. The cause is reversed with directions to compute appellant's damages and enter judgment in his favor against respondents for the amount thereof and costs in the district court. (*Exchange State Bank v. Taber,* 26 Ida. 723, 145 Pac. 1090; *County of Ada v. Clark,* 43 Ida. 489, 253 Pac.

847; *Whittlesey v. Drake,* 43 Ida. 623, 253 Pac. 621; *Case v. Ericson,* 44 Ida. 686, 258 Pac. 536.)

Costs to appellant.

Lee, C. J., Givens and McNaughton, JJ., and Koelsch, D. J., concur.